UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OK TV & APPLIANCES, LLC, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>SAMSUNG ELECTRONICS CO., LTD.; SAMSUNG SDI CO., LTD.; SAMSUNG ELECTRONICS AMERICA, INC.; MATSUSHITA ELECTRIC INDUSTRIAL CO., LTD.; MATSUSHITA TOSHIBA PICTURE DISPLAY CO., LTD.; MT PICTURE DISPLAY CORP. of AMERICA; PANASONIC CORPORATION of NORTH AMERICA; TOSHIBA CORPORATION; TOSHIBA AMERICA CONSUMER PRODUCTS, LLC; ORION ELECTRIC CO., LTD., ORION AMERICA, INC., ROYAL PHILIPS ELECTRONIC N.V.; PHILIPS ELECTRONICS NORTH AMERICA CORPORATION; LG ELECTRONICS INC.; LG ELECTRONICS U.S.A., INC.; LP DISPLAYS INTERNATIONAL LTD.; CHUNGHWA PICTURE TUBES, LTD.; TATUNG COMPANY of AMERICA, INC.; TPV TECHNOLOGY LTD., Co.; TPV INTERNATIONAL (USA), INC.; HITACHI, LTD.; HITACHI AMERICA, LTD.; and HITACHI ASIA, LTD.;<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, by its attorneys, individually and on behalf of a plaintiff class (the "Class") described below, brings this civil action against Defendants for damages and injunctive relief under the antitrust laws of the United States and demands a trial by jury. Plaintiff alleges that Defendants conspired to fix, raise, maintain, and stabilize the price of cathode ray tubes ("CRTs") and products containing CRTs (jointly, "CRT Products"), as defined below, sold in the United States from at least as early as January 1, 1998 to the present

(the "Class Period"). In particular, Defendants intended to and did conspire to moderate the downward pressure on prices for CRT Products caused by the market entry of more advanced display panel products, specifically including Liquid Crystal Displays ("LCDs") and Plasma Display Panels ("PDPs"), both of which also were manufactured by Defendants named in this Complaint. As a result of Defendants' unlawful conduct, Plaintiff and members of the proposed Class paid higher prices for CRT Products than they would have paid in a competitive market. Plaintiff makes these allegations upon information and belief, except those allegations pertaining to Plaintiff and its business, which Plaintiff alleges upon personal knowledge.

## JURISDICTION AND VENUE

1. Plaintiff brings this action to obtain injunctive relief and to recover damages, including treble damages, costs of suit and reasonable attorneys' fees, as a result of Defendants' violation of the Sherman Act, 15 U.S.C. § 1.

2. This Court has jurisdiction over the subject matter of this action pursuant to Sections 4(a) and 16 of the Clayton Act, 15 U.S.C. § 15 and 26, and 28 U.S.C. § 1331 and 1337.

3. Venue is proper in this District pursuant to Section 12 of the Clayton Act, 15 U.S.C. § 22, and 28 U.S.C. § 1391(b), (c) and (d) because several Defendants have their domestic headquarters in this venue and a substantial portion of the affected interstate trade and commerce discussed below has been carried out in this District.

4. By virtue of their nationwide contacts and activities, Defendants are subject to the jurisdiction of this Court. Alternatively, there is jurisdiction over foreign Defendants pursuant to Federal Rule of Civil Procedure 4(k)(2).

## DEFINITIONS

As used in this Complaint, the following terms have the following meanings.

5. "CRT Products" means cathode ray tubes and products containing them sold during the Class Period.

6.      "Class Period" means the time period January 1, 1998 through the present.

7.      "Person" includes not only natural persons but also any other legal business entity, including without limitation corporations, partnerships and sole proprietorships.

8.      References made in this Complaint to any corporation include any predecessors, successors, parents, subsidiaries, affiliates and divisions of that corporation.

## THE PARTIES

### A.    The Plaintiff

9.      Plaintiff OK TV & Appliances, LLC is a Hawaii domestic limited liability company with its principal place of business at 96-1185 Waihona Street, Unit D-5, Pearl City, Hawaii. OK TV & Appliances, LLC purchased CRT Products directly from one or more of the Defendants during the Class Period, and has suffered antitrust injury as a result of Defendants' unlawful conduct as alleged in this Complaint.

### B.    The Defendants

10.     Defendant Samsung Electronics Co., Ltd. ("Samsung Electronics") is a South Korean corporation with its principal place of business at Samsung Main Building, 250-2 ga, Taepyung-ro Chung-gu, Seoul. During the Class Period, Defendant Samsung Electronics manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

11.     Defendant Samsung SDI Co., Ltd. ("Samsung SDI") is a South Korean company with its principal place of business at Samsung Life Insurance Bldg 150 Taepyungno 2-ga, Jung-gu, Seoul, Korea. Samsung SDI is part of the global multinational corporate conglomerate the Samsung Group. During the Class Period, Defendant Samsung Electronics Co. Ltd. manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

3

12. Defendant Samsung Electronics America, Inc. ("Samsung America") is a New Jersey corporation with its principal place of business at 105 Challenger Road, Ridgefield Park, New Jersey. Samsung America is a wholly-owned and controlled subsidiary of Defendant Samsung Electronics. During the Class Period, Defendant Samsung America sold and distributed CRT Products throughout the United States.

13. Defendants Samsung Electronics, Samsung SDI and Samsung America are referred to collectively in this Complaint as "Samsung" or the "Samsung Defendants."

14. Defendant Matsushita Electric Industrial Co., Ltd. ("Matsushita Electric") is a Japanese electronics manufacturer based in Kadoma, Osaka Prefecture, Japan, with its principal place of business at 1006, Oaza Kadoma, Kadoma-shi, Osaka, Japan. During the Class Period, Defendant Matsushita Electric manufactured, sold and distributed CRT Products to customers throughout the United States directly or through its subsidiaries and affiliates.

15. Defendant Matsushita Toshiba Picture Display Co., Ltd. ("MT Picture Display"), a Japanese company, is a joint venture between Matsushita Electric and Toshiba Corporation and began operations on April 1, 2003. Its principal place of business is at Reverge Shinagawa, 4-1-8 Konan, Minato-ku, Tokyo, Japan. On March 30, 2007, the Matsushita Electric acquired the remaining 35.5% equity interest in MT Picture Display from Toshiba. During the Class Period, Defendant MT Picture Display manufactured, sold and distributed CRT Products to customers throughout the United States directly or through its subsidiaries and affiliates.

16. Defendant MT Picture Display Corp. of America ("MT Picture Display America") was a New York corporation with its principal place of business at Westinghouse Circle, Horseheads, New York. In December 2004 it began closing/liquidation procedures. MT Picture Display America was a wholly-owned and controlled subsidiary of Defendant MT Picture Display. During the Class Period, Defendant MT Picture Display America sold and distributed CRT Products to customers throughout the United States.

17.     Defendants Matsushita Electric, MT Picture Display, MT Picture Display America and Panasonic are collectively referred to herein as "Matsushita" or the "Matsushita Defendants."

18.     Defendant Panasonic Corporation of North America ("Panasonic") is a Delaware corporation with its principal place of business at One Panasonic Way, Secaucus, New Jersey. Panasonic is a wholly-owned subsidiary of Defendant Matsushita Electric. During the Class Period, Panasonic sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

19.     Defendant Toshiba Corporation is a Japanese corporation with its principal place of business at 1-1, Shibaura 1-chome, Minato-ku, Tokyo 105-Japan. During the Class Period, Defendant Toshiba Corporation manufactured, sold and distributed CRT Products to customers throughout the United States directly or through its subsidiaries and affiliates.

20.     Defendant Toshiba America Consumer Products, LLC ("Toshiba America CP"), is a New Jersey company with its principal place of business at 82 Totowa Road, Wayne, New Jersey. Toshiba America CP is a wholly-owned and controlled subsidiary of Defendant Toshiba Corporation. During the Class Period, Defendant Toshiba America CP manufactured, sold and distributed CRT Products to customers throughout the United States.

21.     Defendants Toshiba Corporation and Toshiba America CP are referred to collectively in this Complaint as "Toshiba" or the "Toshiba Defendants."

22.     Defendant Orion Electric Co., Ltd. ("Orion Electric") is a Japanese company with its principal place of business at 41-1 Iehisa-cho Echizen-shi Fukui 915-8555, Japan. Orion Electric currently manufactures CRT Products for Defendant Toshiba. During the Class Period, Orion Electric manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

23.     Defendant Orion America, Inc. ("Orion America") is an Indiana corporation with its principal place of business at Hwy 41 North, Orion Place, Princeton,

Indiana. Orion America is a wholly-owned subsidiary of Defendant Orion Electric. During the Class Period, Orion America manufactured, sold, and distributed CRT Products throughout the United States.

24. Defendants Orion Electric and Orion America are referred to collectively in this Complaint as "Orion" or the "Orion Defendants."

25. Defendant Royal Philips Electronic N.V. ("Royal Philips"), is a Dutch entity with its principal place of business at Breitner Center, Amstelplein 2, 1096 BC Amsterdam, The Netherlands. In 2001, Royal Philips and Defendant LG Electronics Inc. entered into a joint venture to combine their CRT Products businesses. The company, Defendant LP Displays, became an independent entity on April 1, 2007. During the Class Period, Royal Philips manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

26. Defendant Philips Electronics North America Corporation ("Philips Electronics NA") is a Delaware corporation with its principal place of business at 1251 Avenue of the Americas, New York, New York. Defendant Philips Electronics NA is a wholly-owned subsidiary of Defendant Royal Philips. During the Class Period, Philips Electronics NA manufactured, sold and distributed CRT Products to customers throughout the United States.

27. Defendants Royal Philips and Philips Electronics NA are referred to collectively in this Complaint as "Philips" or the "Philips Defendants."

28. Defendant LG Electronics Inc. ("LG Electronics") is a Korean corporation with its principal place of business at LG Twin Towers, 20 Yeouido-dong, Yeongdeungpo-gu, Seoul, Korea. During the Class Period, LG Electronics manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

29. Defendant LG Electronics U.S.A., Inc. ("LG USA") is a wholly-owned subsidiary of LG Electronics with its principal place of business at 1000 Sylvan Avenue,

Englewood Cliffs, New Jersey. During the Class Period, LG USA sold and distributed CRT Products throughout the United States.

30.     Defendant LP Displays International Ltd. ("LP Displays"), known as L.G. Philips Displays prior to April 1, 2007, is a Chinese corporation with its principal place of business at 6th Floor, ING Tower, 308 Des Voeux Road Central, Sheung Wan, Hong Kong, China. LP Displays is a joint venture created in 2001 by Defendants LG Electronics and Royal Philips combining their CRT businesses. Defendant LP Displays maintains sales offices in California, Illinois, North Carolina and Texas. During the Class Period, Defendant LP Displays, manufactured, sold and distributed CRT Products throughout the United States.

31.     Defendants LG Electronics, LG USA, and LP Displays are referred to collectively in this Complaint as "LG" or the "LG Defendants."

32.     Defendant Chunghwa Picture Tubes, Ltd. ("Chunghwa") is a Taiwanese corporation with its principal place of business at No.1127, Heping Rd, Bade City, Taoyuan, Taiwan. Defendant Chunghwa is a partially-owned subsidiary of non-party Tatung Company, a Taiwanese corporation. During the Class Period, Defendant Chunghwa manufactured, sold and distributed CRT Products to customers throughout the United States directly or through its subsidiaries and affiliates.

33.     Defendant Tatung Company of America, Inc. ("Tatung America") is a California corporation with its principal place of business at 2850 El Presidio Street, Long Beach, CA. Tatung America is a wholly-owned subsidiary of Tatung Company. During the Class Period, Defendant Tatung Company of America manufactured, sold and distributed CRT Products to customers throughout the United States.

34.     Defendants Chunghwa and Tatung America are referred to collectively in this Complaint as "Chunghwa" or the "Chunghwa Defendants."

35.     Defendant TPV Technology Ltd. Co.("TPV Technology") is a Chinese corporation with its principal place of business at Harcourt House, 21st Fl., Room 2108, 39 Gloucester Rd., Wanchai, Hong Kong, China. TPV Technology describes itself as the world's

7

largest producer of CRT monitors. TPV Technology has a series of joint ventures with Defendant Philips. During the Class Period, Defendant TPV Technology manufactured, sold and distributed CRT Products to customers throughout the United States directly or through its subsidiaries and affiliates.

36. Defendant TPV International (USA), Inc. ("TPV USA"), a Texas corporation, is a subsidiary of Defendant TPV Technology with its principal place of business at 3737 Executive Center Dr, Austin, Texas. During the Class Period, Defendant TPV USA sold and distributed CRT Products to customers throughout the United States.

37. Defendants TPV Technology and TPV USA are referred to collectively in this Complaint as "TPV" or the "TVP Defendants."

38. Defendant Hitachi, Ltd. is a Japanese company with its principal place of business at 6-6, Marunouchi 1-chrome, Chiyoda-ku, Tokyo, 100-8280, Japan. During the Class Period, Hitachi manufactured, sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

39. Defendant Hitachi America, Ltd. ("Hitachi America") is a New York corporation with its principal place of business at 50 Prospect Ave., Tarrytown, New York. Hitachi America is a wholly-owned subsidiary of Defendant Hitachi. During the Class Period, Hitachi America sold and distributed CRT Products throughout the United States.

40. Defendant Hitachi Asia, Ltd. ("Hitachi Asia") is a Singaporean company with its principal place of business at 16 Collyer Quay, #20-00 Hitachi Tower, Singapore 049318. Hitachi Asia is a wholly-owned subsidiary of Defendant Hitachi. During the Class period Hitachi Asia sold and distributed CRT Products throughout the United States directly or through its subsidiaries and affiliates.

41. Defendants Hitachi Ltd., Hitachi America and Hitachi Asia are referred to collectively in this Complaint as "Hitachi" or the "Hitachi Defendants."

## CO-CONSPIRATORS

42.     Other persons and entities, presently unknown to Plaintiff, may have participated as co-conspirators with Defendants in the violations of law alleged in this Complaint and may have engaged in conduct and made statements in furtherance thereof.

43.     The acts charged in this Complaint to have been done by Defendants and their co-conspirators were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

44.     Each Defendant named in this Complaint acted as the agent or joint venturer of or for the other Defendants with respect to the acts, violations and common course of conduct alleged herein. Each Defendant which is a U.S. subsidiary of a foreign parent acted as the sole United States agent for CRTs and CRT Products made by its parent company.

## CLASS ACTION ALLEGATIONS

All persons who, from January 1, 1998 through the present, purchased CRT Products in the United States directly from the Defendants or any subsidiaries or affiliates thereof. Specifically excluded from this Class are the Defendants; the officers, directors or employees of any Defendant; any entity in which any Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of any Defendant. Also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, and any juror assigned to this action.

45.     Based upon the nature of the trade and commerce involved, Plaintiff believes that the members of the Class number in the thousands, and therefore is sufficiently numerous that joinder of all Class members is not practicable.

46.     Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff directly purchased CRT Products from one or more of the Defendants or their co-conspirators, and therefore Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class. Moreover, the relief sought is common to the Class.

47. The following questions of law or fact, among others, are common to all members of the Class:

    i. Whether Defendants combined or conspired to fix, raise, maintain or stabilize the prices of, or allocate the market for, CRT Products;

    ii. Whether Defendants' combination or conspiracy caused CRT Product prices to be higher than they would have been in the absence of Defendants' conduct;

    iii. The scope and extent of Defendants' combination or conspiracy;

    iv. Whether Defendants' conduct violated Section 1 of the Sherman Act;

    v. Whether Defendants' conduct caused injury to the business or property of Plaintiff and the members of the Class;

    vi. The appropriate measure of the amount of damages suffered by the Class; and

    vii. The appropriate nature of class-wide equitable relief.

48. These and other questions of law or fact which are common to the members of the Class predominate over any questions affecting only individual members of the Class

49. Plaintiff will fairly and adequately protect the interests of the Class in that Plaintiff has no interests that are antagonistic to other members of the Class and has retained counsel competent and experienced in the prosecution of class actions and antitrust litigation to represent itself and the Class.

50. A class action is superior to other available methods for the fair and efficient adjudication of this litigation since individual joinder of all Class members is impractical. The damages suffered by individual Class members may be relatively small, given the expense and burden of individual prosecution of the claims asserted in this litigation.

Thus, absent the availability of class action procedures, it would not be feasible for Class members to redress the wrongs done to them. Even if the Class members could afford individual litigation, the court system could not. Further, individual litigation presents the potential for inconsistent or contradictory judgments and would greatly magnify the delay and expense to all parties and to the court system. Therefore, the class action device presents far fewer case management difficulties and will provide the benefits of unitary adjudication, economy of scale and comprehensive supervision by a single court.

51. Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## TRADE AND COMMERCE

52. At the risk of oversimplifying, a Cathode Ray Tube ("CRT") is a specialized vacuum tube in which images are produced when an electron gun contained within the tube produces an electron beam which strikes a phosphorescent surface or screen. CRT technology has been in use for more than 100 years. CRTs are used in, among other things, television sets, computers, automated teller machines, video game machines, video cameras, monitors, oscilloscopes and radar displays. CRTs are useful for displaying photos with a high pixels per unit area and correct color balance, and for having large desktop area concentrated into a small screen.

53. CRTs were first used in television sets for mass market in the late 1940s. For the next fifty years CRTs were the dominant technology used in displays, including but not limited to televisions and computer monitors. CRTs manufactured by Defendants are interchangeable with one another.

54. For decades and into the 1990s, CRTs were the dominant display technology worldwide. However, in the last decade, newer technologies such as Liquid Crystal Displays ("LCDs") and Plasma Display Panels ("PDPs") have eroded the demand for

CRT televisions. The ability of these new displays to operate with a higher quality while being overall less bulky has made them more popular with consumers.

55. Sales of CRT Products began to decline in full force in 2000. Sales projections from then on indicated additional decreases. Matsushita revealed in its projections that it expects industry-wide sales to fall to 69 million units globally by 2010 from 112 million units in 2006. While demand for CRT Products continued to fall in the United States due to LCDs and PDPs, Defendants conspired to stem and reduce the price decline for CRT Products which would naturally have occurred but for Defendants' conspiracy. As a result, despite an increase in sales of competitive products, CRT Products experienced unexplained price sustainability during the Class Period.

56. Economic theory would indicate that flat and increasing prices for CRTs are inconsistent with a competitive market for a product where demand is rapidly decreasing due to advanced technologies. Thus, Defendants' conspiracy was intended to and did moderate and stem the normal downward pressure on prices for CRT Products caused by the entry of the new generation of competing products. In fact, during the Class Period, not only were there unexplained periods of sustained price stability, at times prices for CRT Products inexplicably increased, notwithstanding their impending obsolescence and declining demand. These periods of price stability and price increases are fundamentally inconsistent with a competitive market where demand for CRT Products was decreasing because of the introduction of newer and superior technology.

57. CRTs still remain popular in schools and other public areas due to price and durability. Global sales of CRT Products remains strong due to demand in developing countries and are estimated at $4.43 billion according to estimates in the Japanese media.

58. Throughout the relevant time covered by this Complaint, Defendants and their co-conspirators engaged in the business of marketing and selling CRT Products throughout the United States. During the Class Period, total sales of CRT Products were in the billions of dollars.

## CRTs ARE AN OLIGOPOLISTIC INDUSTRY

59. The market for the manufacture and sale of CRT Products is conducive to the type of collusive activity Plaintiff alleges in this Complaint. The CRT Product market is oligopolistic in nature. Three companies in 2002 controlled approximately 62 percent of the CRT market: Defendants LP Displays, Samsung, and Chunghwa. A group of Japanese producers including Hitachi and Toshiba control an additional 15% of the CRT Product market.

60. Together these Defendants control over 75% of the CRT market.

61. Since 2000, consolidations and manufacturing agreements shrunk the number of competitors in the CRT market. First, Defendants Philips and LG Electronics combined their CRT businesses to form LP Displays (formerly, LG Philips Displays) in 2001. Second, Defendants Toshiba and Matsushita combined some CRT businesses to form MT Picture Displays in 2002. Lastly, Defendant Orion agreed with Toshiba to manufacture any remaining Toshiba CRT Products, removing Toshiba's capacity from the market.

## COOPERATION AMONG DEFENDANTS

62. The leading Defendants have long dominated most electronic product markets. These Defendants have participated in a variety of group enterprises. Defendant TPV Technology has a series of joint ventures with Defendant Philips. Defendant Philips, as mentioned, has had joint ventures with Defendant LG Electronics. Defendant Chunghwa has a joint venture with Defendant Samsung for the production of LCDs. Defendant LG Electronics and Hitachi entered into a joint venture in 2000 for the production of optical storage products such as DVD drives.

63. Collusive behavior within the highly concentrated CRT Product market is facilitated by Defendants' membership in trade organizations within the industry. Defendants Chunghwa, Hitachi, and Samsung are all members of the *Society for Information Display*. Defendants Samsung and LG Electronics are two of the co-founders of the *Korea Display Industry Association*. Defendants Orion, LG Electronics, LP Displays, and Samsung

13

are members of the *Electronic Display Industrial Research Association*. Defendants facilitated the conspiracy by sharing sensitive competitive trade information at association meetings and through trade group relationships.

64. Cathode Ray Tubes are a homogenous product sold by Defendants and purchased by Plaintiff and members of the class primarily on the basis of price.

## DEFENDANTS' ILLEGAL CONDUCT

65. In July 2003, Defendant Mitsubishi Electric closed a Mexican CRT plant with annual capacity for 2.7 million CRTs just 5 years after it opened.

66. On June 1, 2004, Defendant LG Electronics raised the prices of its 15-inch and 17-inch CRT monitors in India, attributing the need for a price increase to a shortage of glass.

67. According to a June 10, 2004 media account, Defendants Samsung SDI, LP Displays and Chunghwa were said to have planned a 6-8% price hike for CRT monitors in 2Q 2004. Reports indicated a similar price increase by the same Defendants on April 22, 2004.

68. In December 2004, Defendant MT Picture Displays closed American subsidiary operations in New York as part of a "global restructuring ... in the CRT business." Going forward, CRTs for the North American market would be supplied by different manufacturing locations.

69. In December 2004, Defendant Toshiba announced that it would discontinue manufacturing traditional CRT televisions. Toshiba subsequently used Defendant Orion to manufacture Toshiba-brand CRT televisions.

70. In July 2005, Defendant LG Philips ended production at its Durham, England facility, referencing shifting demand from Europe to Asia.

71. Defendant MT Displays announced in December 2005 that by early 2006 it would close its subsidiary's operations in Ohio and Germany, also referencing shifting demand to Asia.

14

72. During the Class Period, CRT technology was in the mature phase of its development. Costs of production had diminished. However, throughout the period and contrary to economic theory, prices did not decrease and remained stable for several years.

73. On November 9, 2007, Matsushita Electric Industrial Co. Ltd confirmed that Japan's Fair Trade Commission had begun a probe of its CRT subsidiary, MT Picture Display Co. Ltd. and had raided its Osaka offices. Samsung also confirmed that South Korean authorities were probing its CRT Products business. News agencies also reported investigator visits to LP Displays, formerly LG Phillips Displays.

74. Also on November 9, 2007, the European Commission released a statement announcing inspections of unnamed CRT makers. Reports from Japan indicated that US authorities are also involved in the probe.

75. On November 13, 2007, Defendant Chunghwa Picture Tubes announced that the company had received a summons from the United States Department of Justice ("DOJ") over a cathode-ray tube price-fixing issue, according to the company's filing with the Taiwan Stock Exchange ("TSE").

76. On November 21, 2007, Bloomberg.com reported that antitrust authorities for several jurisdictions are investigating Defendant Philips for price-fixing in the cathode-ray tube market.

77. One Defendant, Samsung, has already pled guilty to price-fixing in the DRAM market and has paid substantial fines to the DOJ for that unlawful activity.

78. Defendants and their co-conspirators have engaged in a combination or conspiracy, the effect of which was to raise the prices at which they sold CRT Products to artificially inflated levels.

79. Defendants, through their officers, directors and employees, effectuated their combination or conspiracy among themselves and their co-conspirators by, among other things:

15

a. Participating in meetings and conversations, including through various trade associations and committees, to discuss the prices of CRT Products in the United States;

b. Agreeing, during those meetings and conversations and elsewhere, to charge prices at specified levels and otherwise to increase and maintain prices of CRT Products sold in the United States;

c. Issuing price announcements and quotations in accordance with the agreements reached; and

d. Selling CRT Products to various customers in the United States at non-competitive prices.

80. While average CRT prices began to decline somewhat at the end of 2003, the cartel created by Defendants operated to mitigate those declines so that prices were still at supracompetitive levels. Defendants' collusive activity still continues and has had the effect of keeping prices at supracompetitive levels.

## ACTIVE CONCEALMENT

81. Throughout and beyond the conspiracy, Defendants and their co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiff and other members of the Class. Defendants and their co-conspirators conducted their conspiracy in secret and kept it mostly within the confines of their higher-level executives. Defendants' conspiracy was by its nature self-concealing. Moreover, Defendants and their co-conspirators publicly and affirmatively provided pretextual and false justifications regarding their pricing decisions. Defendants and their co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection.

82. Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, which it exercised, that Defendants and their co-conspirators

were violating the antitrust laws as alleged in this Complaint until shortly before the filing of this Complaint.

83.  As a result of the active concealment of the conspiracy by Defendants and their co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations in this Complaint have been tolled.

## CLAIM FOR VIOLATIONS OF SECTION 1 OF THE SHERMAN ACT

84.  Plaintiff incorporates and realleges, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

85.  Beginning at a time presently unknown to Plaintiff, but at least as early as January 1, 1998 and continuing through the present, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices for CRT Products in the United States, in violation of Section 1 of the Sherman Act, 15 U.S.C. §1.

86.  In formulating and carrying out their alleged agreement, understanding, and conspiracy, the Defendants and their co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

    a.  To fix, raise, maintain and stabilize the price of CRT Products; and

    b.  To allocate markets for CRT Products among themselves.

87.  Defendants' combination and conspiracy alleged in this Complaint has had the following effects, among others:

    a.  Price competition in the sale of CRT Products has been restrained, suppressed, and/or eliminated in the United States;

    b.  Prices for CRT Products sold by Defendants and their co-conspirators have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels throughout the United States; and

    c.    Those who purchased CRT Products directly or indirectly from Defendants and their co-conspirators have been deprived of the benefits of free and open competition.

88. Plaintiff has been injured and will continue to be injured in its business and property by paying more for CRT Products purchased directly from the Defendants and their co-conspirators than it would have paid and will pay in the absence of Defendants' combination and conspiracy.

89. Plaintiff and the class are entitled to an injunction against Defendants, preventing and restraining the violations alleged herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests:

1. That the Court determine that the claims alleged in this Complaint may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and that Plaintiff is an adequate representative of the Class;

2. That Defendants' unlawful combination or conspiracy alleged in this Complaint be adjudged and decreed to be a restraint of trade or commerce in violation of Section 1 of the Sherman Act;

3. That Plaintiff and the Class recover damages, as provided by federal antitrust laws, and that a joint and several judgment in favor of Plaintiff and the Class be entered against Defendants and each of them in an amount to be trebled in accordance with such laws;

4. That Defendants, their affiliates, successors, transferees, assignees, and the officers, directors, partners, agents, and employees thereof, and all other persons acting or claiming to act on their behalf, be permanently enjoined and restrained from in any manner: (1) continuing, maintaining, or renewing the combination or conspiracy alleged in this

Complaint, or from entering into any other conspiracy similar to that alleged in this Complaint, or from entering into any other combination or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect; and (2) communicating or causing to be communicated to any other person engaged in the sale of CRT Products, information concerning bids of competitors;

5. That Plaintiff and members of the Class be awarded pre- and post-judgment interest, and that that interest be awarded at the highest legal rate from and after the date of service of the initial complaint in this action;

6. That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law; and

7. That Plaintiff and members of the Class have such other, further relief as the case may require and the Court may deem just and proper under the circumstances.

Dated: January 7, 2008                    Respectfully submitted,

**TRUJILLO RODRIGUEZ & RICHARDS LLC**

By:      /s Lisa J. Rodriguez
Lisa J. Rodriguez
8 Kings Highway West
Haddonfield, NJ 08033
(856) 795-9002
(856) 795-9887 - facsimile

W. Joseph Bruckner
Elizabeth R. Odette
LOCKRIDGE GRINDAL NAUEN P.L.L.P.
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
(612) 339-6900
(612) 339-0981 - facsimile
*Counsel for Plaintiff and the Putative Class*